IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **HENRY D. ROBINSON** | ) | |
| **PLAINTIFF** | ) | |
| **v.** | ) | **CASE NO.:** |
| | ) | |
| **MIDWEST EXPRESS CORPORATION** | ) | **PLAINTIFF DEMANDS** |
| **and DAVID C. FELIX** | ) | **JURY TRIAL** |
| **DEFENDANTS** | ) | |

## COMPLAINT

Comes Now Plaintiff and for his complaint alleges as follows:

## I. PARTIES, JURISDICTION AND VENUE.

1. Plaintiff is an individual and a citizen of Missouri.

2. Defendant Midwest Express Corporation (hereinafter "Midwest Express") is a corporation organized under the laws of Kansas with its principal place of business located in Lenexa, Kansas.

3. Defendant David C. Felix (hereinafter "Felix") is an individual and believed to be citizen of Kansas.

4. Midwest Express and Felix transacted business and committed tortious acts in this state. Under MO. REV. STAT. § 506.500 this Court has in personam jurisdiction over the defendants.

5.  The amount in controversy, exclusive of interest and costs, exceeds the amount specified by 28 U.S.C. § 1332. Jurisdiction based on diversity of citizenship and amount in controversy exists in this case.

6.  Midwest Express, which had been warned about its crash risk, authorized Felix, a higher risk driver, to drive its semi on an icy interstate in violation of federal regulation in Clay County, Missouri on January 11, 2020. The semi rear-ended Plaintiff's truck (hereinafter the "Crash") injuring him. Venue is proper under 28 U.S.C. § 1391.

## II. DANGER OF TRUCK CRASHES AND TRUCK SAFETY REGULATION.

7.  Fully loaded semi-trucks can weigh 80,000 pounds or more. They operate day and night, in a range of weather conditions and can transport cargo which can burn, explode or is poisonous.

8.  Operating semi-trucks on public highways involves the risk of physical harm unless skillfully and carefully done. *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630, 642 (W.D. Va. 2008). Defendants knew or should have known this.

9.  Trucking equipment......... has a capability for bringing about terrible injuries and damages to life. *Rodriguez v. Ager*, 705 F.2d 1229, 1236 (10th Cir. 1983). Defendants knew or should have known this.

10. The potential for catastrophic injury and multiple fatalities is obvious.

11. Federal statistics show the danger. They indicate that in 2018 more than 4,900 people were killed and over 150,000 injured in large truck crashes. *2020 Pocket Guide to Large Truck and Bus Statistics* published by the U.S. Department of Transportation, Federal Motor Carrier Safety Administration.

12. For all times herein material Midwest Express and Felix knew or should have known the danger semi-trucks present and that public safety requires that they be operated safely.

13. Congress acknowledged the danger and expressed clear intent for the highest degree of safety in motor carrier transportation. 49 U.S.C. § 113(b).

14. To effectuate Congressional intent the Federal government created a comprehensive motor carrier regulatory framework. Federal statutory regulation of motor carriers is found at 49 U.S.C. § 13101, et seq.

15. As part of the regulatory framework Congress established the Federal Motor Carrier Safety Administration (hereinafter "FMCSA") and mandated that safety was its highest priority. 49 U.S.C. § 113. The FMCSA's core mission is to prevent crashes, injuries and fatalities involving large trucks and buses.

16. The FMCSA promulgated comprehensive motor carrier safety regulations known as the Federal Motor Carrier Safety Regulations (collectively referred to hereinafter as "FMCSRs"), 49 C.F.R. § 325 et seq. Individual regulations are referred to hereinafter as "FMCSR".

17. The FMCSRs are rules to improve highway safety for the trucking industry. *Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413, 419 (8th Cir. 2016). They establish minimum standards of care. FMCSR § 392.2.

18. The FMCSRs have the force of law. *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 556, 119 S. Ct. 2162, 2164, 144 L. Ed. 2d 518 (1999).

19. The FMCSRs include a wide range of rules designed to reduce deaths and injuries caused by truck crashes including driver qualifications, required skills and knowledge, driver hiring procedures, driving and work hour limits, equipment and others.

20. The FMCSRs apply to all employers, employees and commercial motor vehicles transporting property or passengers in interstate commerce.

### III. <u>MIDWEST EXPRESS DUTIES GENERALLY.</u>

21. At the time of the Crash and, for all times herein material, Midwest Express was a FMCSA authorized for-hire motor carrier assigned USDOT# 264809 and operating commercial motor vehicles transporting property for compensation in interstate commerce. Its principal place of business was, and is, in Lenexa, Kansas located in suburban Kansas City.

22. As a requirement of obtaining its operating authority Midwest Express and/or it representative swore under penalty of perjury that:

a) It was familiar with all applicable USDOT regulations relating to the safe operation of commercial vehicles and would comply with them;

b) That it has in place a system and an individual responsible for ensuring overall compliance with FMCSRs;

c) That it is familiar with DOT regulations governing driver qualifications;

d) That it has in place a system for overseeing driver qualification requirements;

e) That it has in place a driver safety training/orientation program;

f) That it has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles, including drivers' hours of service, vehicle inspection, repair, and maintenance;

g) That it is familiar with, and will have in place on the appropriate effective date, a system for complying with USDOT regulations governing alcohol and controlled substances testing requirements;

h) That it had and maintained an accident register.

23. Midwest Express was required to operate its semi-trucks skillfully and carefully so as not put the traveling public in danger of "terrible injuries and damages to life". *Rodriguez*, supra.

24. For all times herein material Midwest Express was required to comply with the duties set forth above, the FMCSRs, applicable state and local law and the standard of care.

25. The FMCSRs and industry standards required Midwest Express to properly qualify, train and supervise its drivers, to properly inspect and maintain its commercial motor vehicles and to have safety management systems for the safe operation of them.

## IV. <u>MIDWEST EXPRESS OPERATIONS AND CONTROL</u>.

26. For all times herein material Midwest Express operated a fleet of approximately 100 semi-trucks, including the one involved in the Crash, more than 9 million miles annually on interstate highways and public roads in Missouri, Kansas and other states.

27. For all times herein material Midwest Express dispatched, authorized, instructed and controlled or had the right and duty to control its trucks and drivers including the one being operated by Felix when involved in the Crash.

28. For all times herein material through on-board technology (hereinafter "Telematics") available to and used in the trucking industry Midwest Express knew or could and should have known the route of travel, location, road conditions, and speed of its trucks and drivers including the truck being driven by Felix involved in the Crash, in real time as they proceeded on the road and expressly or impliedly authorized the same.

29. For all times herein material Midwest Express had or could and should have had the capability to instantly communicate weather information and forecasts, road condition information, instructions and other information in real time to its trucks and drivers including Felix, as they traveled on the road.

## V. **FMCSA WARNS MIDWEST EXPRESS ABOUT CRASH RISK.**

30. Truck crashes were a problem at Midwest Express. In September, 2018, more than a year before the Crash, the FMCSA sent Midwest Express a "Warning Letter" stating in part:

> MIDWEST EXPRESS CORPORATION's Crash Indicator BASIC is at a level that indicates a risk of additional crashes. We are bringing the safety problem to your attention so that you can take corrective action.

31. The FMCSA recommended that Midwest Express: "assess your safety management practices and processes, and take steps to reduce the risk of MIDWEST EXPRESS CORPORATION's involvement in crashes."

32. Despite the warning safety problems continued at Midwest Express.

## VI. **MIDWEST EXPRESS SAYS:**
## **"SAFETY BEGINS WITH HIRING THE BEST DRIVERS"**
## **BUT EMPLOYS FELIX - A HIGHER RISK DRIVER.**

33. Midwest Express publicly states: "Safety begins with hiring the best drivers— those who have good driving records and value safety."

34. Trucking industry research supports this. *Predicting Truck Crash Involvement; 2018 Update*, a study published by the American Transportation Research Institute (hereinafter "ATRI Crash Risk Study"), indicates that truck drivers with a record of speeding and other traffic violations have a higher likelihood of being involved in crashes.

35. Felix had a record and pattern of dangerous and illegal driving making him a higher risk driver. His Commercial Driver's License (hereinafter "CDL") and regular

driver's license had previously been suspended. He has been arrested for driving under the influence (hereinafter "DUI"), issued multiple speeding tickets and been cited for other traffic violations.

36. Before allowing Felix to drive a semi-truck Midwest Express was required to ensure that Felix could drive it safely.

37. Midwest Express by making the investigations and inquiries the FMCSRs and standard of care required knew or should have known about Felix's violation record and foreseen that he was at higher risk for a wreck.

38. Despite the FMCSA crash risk warning, Midwest Express statement about safety begins with hiring the best drivers, Felix's violation record and higher crash risk Midwest Express employed and authorized him to drive its semi-truck on public roads including the icy interstate at the time and place of the Crash.

39. Immediately before and, at the time and place of the Crash, Midwest Express employed Felix as a CDL truck driver who was then acting within the course and scope of his employment. Midwest Express is vicariously liable for his acts and omissions alleged herein.

40. Immediately before and at the time and place of the Crash Felix was driving a Midwest Express commercial motor vehicle in interstate commerce. Midwest Express and Felix were required to comply with the FMCSRs, motor vehicle laws, traffic laws and truck safety regulations of jurisdiction in which it was operated.

## VII. <u>TRUCK DRIVER REQUIREMENTS</u>.

41. When driving the Midwest Express semi truck at the time and place of the Crash Felix was required to possess a valid CDL.

42. When driving the Midwest Express semi truck at the time and place of the Crash Felix was required to have knowledge (hereinafter "Required Knowledge") including:

(1) **Visual search**. The importance of proper visual search, and proper visual search methods, including seeing ahead and to the sides; and

(2) **Speed management**. The importance of understanding the effects of speed, including speed and stopping distance, speed and surface conditions, speed and visibility and speed and traffic flow; and

(3) **Space management**. The procedures and techniques for controlling the space around the vehicle, including the importance of space management and space cushions, e.g., controlling space ahead/to the rear; and

(4) **Extreme driving conditions**. The basic information on operating in extreme driving conditions and the hazards encountered in such conditions, including bad weather, e.g., snow, ice, sleet, high wind; and

(5) **Hazard perception**. The basic information on hazard perception and clues for recognition of hazards, including road characteristics and road user activities; and

(6) **Emergency maneuvers**. The basic information concerning when and how to make emergency maneuvers including evasive steering and emergency stopping.

# COUNT I.

## MIDWEST EXPRESS SEMI IN FAST LANE OF ICY INTERSTATE REAR-ENDS PLAINTIFF - NEGLIGENCE, NEGLIGENCE PER SE AND/OR DISREGARD FOR THE SAFETY OF OTHERS.

COMES Now plaintiff and for his first cause of action against defendants states and alleges as follows:

43. Plaintiff realleges and incorporates by reference the allegations above.

**A. Freezing Rain and Icy, Dangerous Condition of Interstate 35.**

44. Trucking companies and semi-truck drivers must maintain awareness of weather and road conditions for the safety of the public.

45. On January 10, 2020, the day before the Crash, a winter storm entered the Kansas City area.

46. On the night of January 10-11, 2020 freezing rain fell causing ¼" to ½" of ice accumulation. Two to three inches of snow fell on top of the ice. Interstate 35 in the vicinity of the Crash was among the areas impacted.

47. Official National Weather Service/NOAA records contain the following:

| Episode Narrative | A mid season winter storm moved through the area bringing nearly every precipitation type with it. This storm produced around a quarter to half inch of ice and several inches of snow area-wide. There were several accidents, but at least one accident in Harrison County resulted in a fatality. |
|---|---|
| Event Narrative | Freezing rain occurred through much of the night going into January 11, and caused around a quarter to one-third inch accumulation. This occurred prior to about 2 to 3 inches of snow falling. This resulted in several auto accidents. |

48. The freezing rain, accumulated ice, falling and accumulating snow made road and driving conditions on Interstate 35 in the vicinity of the Crash hazardous and dangerous.

49. Before the Crash warnings about the icy, dangerous conditions had been disseminated to the public through news media and other channels.

50. Midwest Express and Felix knew or should have known of the dangerous conditions on the icy interstate before the Crash.

**B. Midwest Express Semi Required to be Off the Road.**

51. In conditions similar to those alleged above semi-trucks driven on high-speed highways have caused or become involved in multi-vehicle chain-reaction collisions resulting in multiple fatalities and serious injuries.

52. FMCSR § 392.14 was adopted to reduce truck crashes in conditions similar to those alleged above and other hazardous conditions.

53. FMCSR § 392.14 states in part:

> **§ 392.14.  Hazardous conditions, extreme caution.**
>
> **Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous condition, such as those caused by snow, ice**, sleet, fog, mist, rain, dust or smoke adversely affect visibility or traction. Speed shall be reduced when such conditions exist. **If conditions are sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued, and shall not be resumed until a commercial motor vehicle can be safely operated**………. (emphasis supplied)

54. Semi truck drivers must drive with extreme caution in hazardous conditions which affect visibility or traction.

55. Midwest Express and Felix were required to use extreme caution in the icy, dangerous conditions on the date of and immediately before the Crash.

56. Despite FMCSA's warning about crash risk, Midwest Express assigned and dispatched Felix, a higher risk driver, to drive its semi-truck in hazardous conditions requiring extreme caution under FMCSR § 392.14.

57. The official Missouri and Kansas CDL manuals and the standard of care requires semi drivers on icy surfaces to slow speed to a crawl and stop driving as soon as safely possible.

58. Before the Crash Felix was required to slow speed to a crawl and get off the road.

59. For all times herein material, when a duty is prescribed for a driver or a prohibition is imposed upon the driver it was the duty of Midwest Express to require Felix to comply with the duty or prohibition.

60. Midwest Express was required to stop Felix from driving its semi-truck on the icy interstate before the Crash. Through Telematics and/or otherwise Midwest Express could and should have communicated such instructions to Felix before the Crash.

61. Instead, Midwest Express on information and belief, expressly or impliedly authorized, approved and/or or ratified Felix, a higher risk driver with a record of license suspensions, DUI, speeding and other traffic violations to continue driving its 80,000 lb. semi-truck on the icy interstate when FMCSR § 392.14 required it to stop.

62. Felix was driving in the **fast lane** of the icy interstate at approximately 65 miles per hour immediately before the Crash.

63. Midwest Express and Felix knew or should have known of the danger of catastrophic and fatal injury their choices and conduct created.

64. Midwest Express by permitting him to do so and Felix, by doing so, violated FMCSR § 392.14, the standard of care and displayed complete indifference to or conscious disregard for the safety of others.

65. After injuring Plaintiff in the Crash Midwest Express continued to operate in icy conditions in violation of FMCSR § 392.14 and the standard of care. In February, 2021 another Midwest Express semi jackknifed on an icy interstate and was involved in a multi-vehicle wreck in Boyd County, Kentucky.

66. Midwest Express's operation of semi-trucks on public roads in violation of FMCSR § 392.14 after the 2018 FMCSA crash risk warning substantiate the FMCSA warning and demonstrate a pattern of complete indifference to or conscious disregard for the safety of others.

**C. Driving Too Fast- MO. REV. STAT. § 304.012.**

67. Semi truck drivers must drive at a safe speed for weather and road conditions.

68. Driving too fast is a major cause of, or factor in, truck wrecks and fatal crashes. Midwest Express and Felix knew or should have known this.

69. Felix and other Midwest Express drivers have a record of speeding.

70. In September, 2019 less than four months before the Crash, Felix was ticketed for driving 50 miles per hour in a 35 mile per hour zone.

71. FMCSR § 391.25(b)(2) states that speeding indicates that the driver has exhibited disregard for public safety.

72. MO. REV. STAT. § 304.012 requires drivers to drive at a rate of speed so as not to endanger the property of another or the life or limb of any person.

73. Felix was required to exercise extreme caution and stop driving before the Crash.

74. Notwithstanding MO. REV. STAT. § 304.012 and FMCSR § 392.14 Felix drove the Midwest Express semi-truck in the **fast lane** of the icy interstate at an excessive speed estimated at 65 miles per hour.

75. Midwest Express and Felix endangered the life or limb of plaintiff and others on the highway and failed to prevent or avoid the Crash.

76. Through Telematics Midwest Express knew or could and should have known that Felix was driving the Midwest Express semi-truck too fast on the icy interstate.

77. Midwest Express, on information and belief, expressly or impliedly permitted, authorized, approved or ratified Felix's driving of the Midwest Express too fast on the icy interstate and permitted him to continue to do the same.

78. The speed at which Midwest Express permitted Felix to operate their semi-truck violated FMCSR § 392.14, MO. REV. STAT. § 304.012 and the standard of care.

79. This conduct by Midwest Express and Felix was negligent, negligent per se and/or reflected complete indifference to and conscious disregard for the safety of others.

**E. Following at Less Than 300 Feet- MO. REV. STAT. § 304.044.**

80. MO. REV. STAT. § 304.044 states in part:

**304.044. Buses and trucks not to follow within three hundred feet — penalty. —**

2. The driver of any truck or bus, when traveling upon a public highway of this state outside of a business or residential district, shall not follow within three hundred feet of another such vehicle; provided, the provisions of this section shall not be construed to prevent the overtaking and passing, by any such truck or bus, of another similar vehicle.

81. The location of the Crash was outside of a business or residential district as used in MO. REV. STAT. § 304.044. A pickup truck is included within the term truck as used in this section. *Thebeau v. Thebeau*, 324 S.W.2d 674 (Mo. Sup. Ct., en banc, 1959).

82. The Midwest Express semi-truck driven by Felix followed plaintiff at a distance of less than 300 feet in violation of MO. REV. STAT. § 304.044, FMCSR § 392.14 and the standard of care.

83. Felix's conduct in following plaintiff too closely was negligent, negligent per se and/or reflected complete indifference to and conscious disregard for the safety of others.

**F. FMCSR § 392.2 – Critical Violations - Inadequate Safety Controls.**

84. FMCSR § 392.2 states in part:

> **§ 392.2 Applicable operating rules.**
>
> Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated…………….

85. Midwest Express and Felix violated MO. REV. STAT. § 304.012 and MO. REV. STAT. § 304.044 and thus violated FMCSR § 392.2.

86. The FMCSA classifies violation of FMCSR § 392.2 as a critical regulation.

87. Violation of critical regulations indicate inadequate safety management controls and higher than average crash rates according to FMCSA.

88. After the September, 2018 FMCSA crash risk warning other Midwest Express drivers and trucks continued to violate FMCSR § 392.2.

89. Violation of critical regulations like FMCSR § 392.2 indicate inadequate safety management controls by Midwest Express.

90. Operating a fleet of approximately 100 semi-trucks on public roads with inadequate safety controls is consistent with the September, 2018 FMCSA crash risk warning.

91. By so doing Midwest Express showed indifference to or conscious disregard for the safety of others.

G. **The Crash.**

92. At the time and place alleged above Felix drove and Midwest Express authorized and permitted him to drive its semi-truck on the icy interstate in violation of FMCSR § 392.14 and the standard of care at a speed which endangered the life or limb of the plaintiff in violation of MO. REV. STAT. § 304.012, followed plaintiff more closely than MO. REV. STAT. § 304.044 and the standard of care permits, violated FMCSR § 392.2, failed to maintain a proper lookout or swerve so as to avoid the collision and otherwise deviated from the applicable standard(s) of care.

93. Such acts and omissions by Felix demonstrate a lack of or disregard for the Required Knowledge set forth.

94. As a direct and proximate result of the acts and omissions alleged above, Felix permitted or caused the Midwest Express semi-truck to rear-end, crash into and collide with the back of the pickup truck plaintiff was driving and plaintiff was injured.

95. The force of the crash propelled plaintiff's truck off the road and into the median barrier. These events are illustrated in the Highway Patrol accident report diagram below:



96. Midwest Express's and Felix's acts and/or omissions alleged above constitute negligence, negligence per se, and/or complete indifference to and conscious disregard for the safety of others.

### H. **Damages.**

97. As a direct and proximate result of the acts and omissions alleged above plaintiff was injured and his truck was damaged in the Crash.

98. As a direct and proximate result of the injuries sustained in the Crash plaintiff sustained permanent injury, has experienced and continues to experience pain, suffering, disability and the quality and enjoyment of his life was, is and will be diminished.

99. As a direct and proximate result of the injuries sustained in the Crash plaintiff has required medical care and treatment, incurred expenses for the same and will require and incur additional medical care, treatment and expenses in the future.

100. As a direct and proximate result of the injuries sustained in the Crash plaintiff has lost income, his earnings capacity has been reduced and he will continue to suffer reduced earning capacity and lost income in the future.

### I. **Punitive Damages and MO. REV. STAT. § 510.261.**

101. Evidence of failure to follow motor carrier regulations can support an award of punitive damages. *Kyles v. Celadon Trucking Servs.*, WL 6143953 at *4 (W.D.Mo. 2015). Punitive damages may be awarded for violation of FMCSR § 392.14. *Ellis v. Elkins*, 2018 WL 6331706, (W.D.Mo. 2018).

102. MO. REV. STAT. § 510.261 prohibits initial pleadings in civil actions from including a punitive damage claim.

103. Federal courts apply federal procedural law and state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141, 14 L. Ed. 2d 8 (1965)

104. Fed.R.Civ.P. 8 sets forth general pleading rules in federal courts. Fed.R.Civ.P. 9 sets forth the requirements for pleading special matters. Neither rule contains any special requirements for the manner or timing of pleading of punitive damages.

105. The MO. REV. STAT. § 510.261 prohibition on pleading punitive damages in initial pleadings does not apply in federal court. *Hogquist v. PACCAR, Inc*, 2021 WL 6050932, (W.D. Mo. Dec. 21, 2021) states at page 3:

> However, the Western and Eastern District federal courts in Missouri have addressed whether Mo. Rev. Stat. § 510.261 prohibits pleading punitive damages in an initial complaint in federal court. Both Districts agree that § 510.261 is a procedural pleading rule that is not applicable to federal courts exercising diversity jurisdiction. *See Rardon v. Falcon Safety Prod., Inc.,* No. 20-6165-CV-SJ-BP, 2021 WL 2008923, at *13 (W.D. Mo. May 4, 2021) ("[S]tate pleading rules do not apply in federal court, and federal pleading rules do not prohibit a plaintiff from seeking punitive damages in his Complaint"); *Bartek v. Lawrence*, No. 4:21-CV-01070, 2021 WL 4523075, at *1 (E.D. Mo. Oct. 1, 2021); *Anderson v. R.J. Reynolds Tobacco Co.*, No. 4:20-CV-01610-MTS, 2021 WL 352165, at *7 (E.D. Mo. Aug. 11, 2021); *Kilburn v. Autosport Acquisitions, LLC, No.*, 1:20-CV-211, 2021 WL 307550, at *1-*2 (E.D. Mo. Jan. 29, 2021); *Gaydos v. Gully Transportation, Inc.*, No. 4:21-CV-388-SPM, 2021 WL 4963523, at *2 (E.D. Mo. Oct. 26, 2021).

106. Plaintiff may properly plead a punitive damage claim in this complaint.

107. Defendants violated MO. REV. STAT § 304.012, MO. REV. STAT. § 304.044, FMCSR § 392.14, FMCSR § 392.2 and the standard of care.

108. The Crash and surrounding circumstances are examples of the inadequate safety management and increased crash risk which the FMCSA warned Midwest Express about more than a year before.

109. With the danger of catastrophic injury and death semi-truck crashes present, Midwest Express displayed indifference to or conscious disregard for the safety of others by operating its fleet of approximately 100 semi-trucks, including the one involved in the Crash, more than 9 million miles each year on public roads with inadequate safety practices and higher danger of crashes.

110. Defendants acts and/or omissions alleged above and following constitute negligence, negligence per se, and/or complete indifference to and conscious disregard for the safety of others.

111. Plaintiff is entitled to judgment against defendants.

   **WHEREFORE**, plaintiff prays for judgment against defendants for compensatory and punitive damages an amount in excess of $75,000, his costs herein expended and incurred and such other and further relief as the Court may deem just and equitable.

## COUNT II.

## MIDWEST EXPRESS HIRING AND RETENTION-NEGLIGENCE, NEGLIGENCE PER SE AND/OR DISREGARD FOR THE SAFETY OF OTHERS.

COMES Now plaintiff and for his second cause of action against Midwest Express states and alleges as follows:

112. Plaintiff realleges and incorporates by reference the allegations set forth above.

113. Felix demonstrated a lack of or disregard for the Required Knowledge detailed above. At the time and place of the Crash Felix:

A. Used improper visual search and failed to maintain a proper lookout; and

B. Improperly and unsafely managed speed and drove the Midwest Express semi-truck too fast for conditions; and

C. Improperly and unsafely managed space by following plaintiff more closely than reasonably safe and prudent; and

D. Failed to properly execute emergency maneuvers by not swerving to avoid the Crash; and

E. Failed to comply with the rules and utilize the procedures for extreme and hazardous driving conditions; and

F. Otherwise failed to comply with the FMCSRs, Missouri law, local law and the standard of care.

114. By lacking or acting in disregard for the above Required Knowledge Felix could not and did not safely operate the Midwest Express semi truck safely at the time and place of the Crash.

**B. <u>Felix- A Higher Risk Driver</u>.**

115.  Felix's driving record includes CDL and driver's license suspension, DUI, at least four speeding tickets (including one for 50 miles per hour in a 35-mile zone within four months of the Crash), citations for failure to obey a traffic control device, a stop/yield sign violation and other violations.

116.  The ATRI Crash Risk Study  found that truck drivers with speeding violations are 45% more likely to be involved in a collision, a failure to obey a traffic control device violation makes a trucker 30% more likely to be involved in a wreck and a disobeying a traffic sign violation increases risk by 25%.

117.  Felix has been convicted of all of these.

**C. <u>FMCSR Hiring and Employment Requirements</u>.**

118.  Midwest Express states: "Safety begins with hiring the best drivers- those who have good driving records and value safety".

119.  The FMCSRs contain detailed requirements for hiring and retention of CDL truck drivers including Felix.

120.   Prior to employing Felix Midwest Express was required to obtain an employment application from him containing information including a list of motor vehicle law violations and prior crashes.

121.  Midwest Express was required to make investigations and inquiries about Felix, including making inquiries with prior employers, obtaining copies of the driver's prior safety performance with DOT regulated employers and motor vehicles records.

122.  FMCSR §391.31 provides for Midwest Express administering a road test to Felix before allowing him to drive a truck for them.

123.  Midwest Express was required to obtain updated motor vehicle records for Felix at least every 12 months and to review those records to verify that he met the minimum requirements for safe driving.

124.  In making this review Midwest Express was required to consider any evidence that Felix had violated the FMCSRs and laws governing motor vehicle operation

125.  In making this review Midwest Express was required give great weight to violations, such as speeding, that indicate that the driver has exhibited a disregard for the safety of the public.

126.  Midwest Express was required to require Felix to annually provide it with a list of all violations of motor vehicle laws which he had been convicted of or forfeited bond in the previous 12 months.

127.  Felix was required to notify Midwest Express of convictions of motor vehicle laws within 30 days of such conviction.

128.  Midwest Express was prohibited from allowing Felix to drive a commercial motor vehicle unless he could do so safely.

129.  From the FMCSA warning letter and other information Midwest Express knew or should have known before the Crash that its safety practices were inadequate, endangered the public and required improvement.

130.  By complying with the FMCSR requirements referenced above and the standard of care Midwest Express knew or should have known of Felix's record of and proclivity for speeding and violating traffic laws.

131. Midwest Express knew, should or could have known of Felix's lack of, or disregard for, the Required Knowledge set forth above.

132.  Midwest Express knew or should have known that Felix was a higher risk driver and that hiring and employing such drivers increased the likelihood of crashes.

133.  Despite having been warned about its crash risk by FMCSA and stating that safety begins with hiring the best drivers Midwest Express hired and employed Felix with his record of CDL suspension, speeding, DUI, violating traffic laws and higher crash risk and authorized and dispatched him to drive its 80,000 lb. semi-truck on the icy interstate.

134. Consistent with his record, Felix violated traffic laws and FMCSRs as alleged above immediately before the Crash. These were causes of the Crash.

135. Under Missouri law an employer may be liable for hiring or retention of an employee where the employer knew or should have known of the employee's dangerous proclivities and causation is shown.

**D. Speeding and Driving Too Fast.**

136.  Speeding is one of the primary causes of wrecks. Midwest Express knew or should have known this.

137.  The standard of care requires that CDL drivers like Felix know and practice proper speed management including knowing the relationship between speed, stopping distance, road surface conditions and traffic flow.

138.  The ATRI Crash Risk Study indicates that a prior speed violation increases the likelihood of a truck driver being involved in a wreck by 45%.

139.  Prior to the Crash Felix had a history of speed violations as alleged above.

140.  Felix either did not know, or immediately prior to the Crash intentionally disregarded, the requirements of MO. REV. STAT. § 304.012 to drive at a speed so as not to endanger others.

141.  Felix's driving on the icy interstate at a speed which endangered the Plaintiff in violation of MO. REV. STAT. § 304.012 was one of the causes of the Crash.

142.  Driving on the icy interstate at a speed which endangered others is consistent with Felix's pattern of speeding and other traffic violations.

143.  FMCSR § 391.25(b)(2) states that speeding indicates that the driver has exhibited disregard for the safety of the public.

144.  After the Crash injuring plaintiff Midwest Express continued to employ drivers who violated speed laws when driving Midwest Express trucks.

145. Midwest Express's hiring, retention and employment of Felix to drive an 80,000 lb. semi-truck on the icy interstate alleged above with his lack of and/or disregard for the knowledge required of CDL drivers, known proclivity to speed and violate traffic safety laws was a cause of the Crash and constitutes negligence, negligence per se, and/or complete indifference to and conscious disregard for the safety of others.

146. Plaintiff is entitled to judgment against Midwest Express.

**WHEREFORE**, plaintiff prays for judgment against Midwest Express for compensatory and punitive damages an amount in excess of $ 75,000, his costs herein expended and incurred and such other and further relief as the Court may deem just and equitable.

## COUNT III.

## MIDWEST EXPRESS TRAINING - NEGLIGENCE, NEGLIGENCE PER SE AND/OR DISREGARD FOR THE SAFETY OF OTHERS.

147. COMES Now plaintiff and for his third cause of action against Midwest Express states and alleges as follows:

148. Plaintiff realleges and incorporates by reference the allegations set forth above.

**A. Training Requirements.**

149. Proper and sufficient training and instruction of CDL truck drivers is an essential part of proper safety management, is required by the FMCSRs, the standard of care and could have prevented the Crash.

150. For all times herein material Midwest Express was required to teach and train its truck drivers including Felix sufficiently to ensure that they understood and complied with the FMCSRs and the standard of care for safe CDL truck drivers.

151. Missouri recognizes a cause of action for improper or insufficient training. *Bader Farms, Inc. v. Monsanto Co.*, 431 F.Supp.3d 1084 (E.D.MO., 2019).

**B. Insufficient Training.**

152. Midwest Express failed to train and instruct Felix sufficiently to ensure that he complied with the FMCSRs generally and, in particular as detailed above.

153. Midwest Express failed to train and instruct Felix sufficiently to ensure that he knew and utilized the Required Knowledge detailed above.

154. Midwest Express failed to train and instruct Felix sufficiently to ensure that he complied with MO. REV. STAT. § 304.012 and MO. REV. STAT. § 304.044.

155. On February 12, 2021, over a year after the Crash, another Midwest Express semi-truck jackknifed on Interstate 64 in Boyd County, Kentucky in conditions described as "a solid sheet of ice" when it should not have been on the road.

156. Midwest Express failed to train and instruct its drivers including Felix sufficiently to ensure that they complied with FMCSR §392.14 and the standards for driving in icy conditions.

157. The above violates the FMCSRs and the standard of care.

158. These omissions and/or acts were direct and proximate causes of the Crash.

159. Midwest Express's acts and/or omissions alleged above constitute negligence, negligence per se, and/or complete indifference to and conscious disregard for the safety of others.

160. Plaintiff is entitled to judgment against Midwest Express.

**WHEREFORE**, plaintiff prays for judgment against Midwest Express for compensatory and punitive damages an amount in excess of $ 75,000, his costs herein expended and incurred and such other and further relief as the Court may deem just and equitable.

s/ Lawrence D. Flick
Lawrence D. Flick
KS Bar # 11162; MOBAR# 67906
Flick Law Firm
7500 College Blvd., Suite 526
Overland Park, Kansas 66210
Telephone: (913) 648-7000
Facsimile: (913) 648-7080
E-mail: lflick@flicklawfirm.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

s/ Lawrence D. Flick

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Missouri as the place of trial of this action.

s/ Lawrence D. Flick
